## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**RED BARN MOTORS, INC.,**
**DONALD B. RICHARDSON, AND**
**BARBARA A. RICHARDSON,**

      **Plaintiffs,**

    **v.**

**NEXTGEAR CAPITAL, INC.,**
**as successor-in-interest to**
**DEALER SERVICES CORPORATION,**
**and LOUISIANA'S FIRST CHOICE**
**AUTO AUCTION, L.L.C.**

      **Defendants.**

**CIVIL ACTION NO._____**

### COMPLAINT

Plaintiffs, Red Barn Motors, Inc., Donald B. Richardson, and Barbara A. Richardson (hereinafter "Red Barn" or "Plaintiffs"), by counsel, for its Complaint against Nextgear Capital, Inc., as successor-in-interest to Dealer Services Corporation (hereinafter "DSC" or "Defendant"), and Louisiana's First Choice Auto Auction, L.L.C. (hereinafter "First Choice") states as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 98, 1391 (b).

## Parties

3. Red Barn Motors, Inc., is a Louisiana corporation with its principal place of business at 26007 La. Hwy. 16, Denham Springs, Louisiana 70726.

4. Donald B. Richardson is an individual residing at 8628 Shadow Springs Boulevard, Denham Springs, Louisiana 70726.

5. Barbara A. Richardson is an individual residing at 8628 Shadow Springs Boulevard, Denham Springs, Louisiana 70726.

6. Nextgear Capital, Inc., as successor-in-interest to Dealer Services Corporation, is a Delaware corporation with its principal place of business at 1320 City Center Drive, Suite 100, Carmel, Indiana 46032.

7. Louisiana's First Choice Auto Auction, L.L.C. is a Texas limited liability company, authorized to and doing business in the state of Louisiana, with its Louisiana principal place of business at 18310 Woodscale Rd., Tangipahoa, Louisiana 70401.

## General Allegations
### (Background Information)

8. Red Barn Motors, Inc. is a family owned and operated used car dealership located in Denham Springs, Louisiana.

9. On or around May of 2011, while in attendance at an automobile auction, a representative of Red Barn was approached by Stuart LeBeau, a representative of DSC, for the purpose of entering into a floor plan agreement.

10. A floor plan agreement basically provides a line of credit to car dealers that allows for the purchase of cars that will in turn be placed on their lots for sale. Used car dealers buy

2

vehicles at auction, place the vehicles for sale, and the floor plan company pays the auction for the purchase of the vehicle.

11. On or around July 29, 2011, Red Barn and DSC entered into a Demand Promissory Note and Security Agreement (the "Note") in the principal sum of $200,000.00, together with interest payable and other charges all as stated in the Note (sometimes hereafter referred to as "line of credit").

12. Red Barn utilized the floor plan agreement to purchase vehicles at auction in order to sell them at the Red Barn Motors used car lot.

13. During the time in which Red Barn was utilizing its line of credit with DSC, there were several instances wherein Red Barn purchased vehicles using the line of credit but the auction was unable to obtain title to said vehicles even though Red Barn had already paid off DSC for the purchase of these vehicles.

14. DSC never paid the auction house for these vehicles, therefore was forced to reimburse all of the interest and curtailment fees on these vehicles purchased over the term of the contract due to the title not being obtained.

15. In June of 2012, Devon London, general manager of Red Barn, through a search of Red Barn's account on DSC's online application, noticed transactions wherein DSC had not actually loaned money to Red Barn for the purchase of vehicles, but was charging interest to Red Barn pursuant to the terms of its line of credit.

16. During June of 2012, Red Barn had in place an agreement with multiple auto auctions wherein the auctions allowed Red Barn up to a seven day delay to decide whether it wanted to use its line of credit with DSC in order to pay for the vehicles purchased at the auctions.

17. Even when Red Barn delayed in utilizing the line of credit provided by DSC to purchase vehicles from these auctions, DSC would back-date the withdrawal on the line of credit to the date in which Red Barn purchased a vehicle, and charged interest and fees from that back dated date.

18. Upon information and belief, DSC was in the practice of not paying the auction houses from which Red Barn purchased vehicles until DSC received the title to the vehicles purchased.

19. Upon information and belief, it often took between six and eight weeks for DSC to receive the titles to the vehicles purchased by Red Barn at auctions at which time, upon receipt of the title, DSC would electronically transfer funds from its account to pay for vehicles in which it was charging interest and fees for this extended period of time without ever loaning the money to Red Barn; DSC would calculate and charge interest on these transactions from the date Red Barn purchased the vehicles from the auction rather than charging interest and fees from the time in which it actually loaned Red Barn money for the purchase of vehicles.

20. Sometime in March of 2013, Red Barn began experiencing financial difficulties, which caused it to be unable to make payments on its line of credit extended by DSC.

21. As a result, sometime in April of 2013, DSC began seizing Red Barn assets, including vehicles on the Red Barn lot.

22. Sometime in April of 2013, Red Barn Motors employees delivered between eleven (11) and fourteen (14) vehicles to Louisiana First Choice Auto Auction, L.L.C. ("First Choice"), with the intentions of selling said vehicles, the proceeds from the sales to be used to pay DSC for the debt Red Barn owed on its line of credit.

23. Red Barn was unable to sell the 11-14 vehicles due to the fact that First Choice seized the vehicles and delivered them to DSC.

24. On or around, April 25, 2013, Red Barn filed a voluntary petition for bankruptcy under Chapter 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Louisiana.

### Specific Allegations

### COUNT I AGAINST DSC- BREACH OF CONTRACT

25. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-24, inclusive, as if pleaded herein *in extenso.*

26. As pled above, Red Barn and DSC entered into a Demand Promissory Note and Security Agreement (the "Note") in the principal sum of $200,000.00, which Red Barn utilized to purchase vehicles for the purpose of selling them at its used car lot.

27. DSC breached the Note by charging interest and fees on purchases made by Red Barn without actually loaning money against Red Barn's line of credit provided for by DSC.

28. DSC chose to make distributions on the line of credit at the point it received titles to the vehicles purchased by Red Barn at auction instead of paying for the vehicles at the time of purchase.

29. To the contrary, DSC back-dated distributions from Red Barn's line of credit to the date Red Barn was successful in bidding on vehicles at auction.

30. By failing to properly perform its obligation, and by charging interest on money that was not actually lent, DSC breached the Note.

## COUNT II AGAINST DSC- UNJUST ENRICHMENT

31. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-30, inclusive, as if pleaded herein *in extenso.*

32. By charging and collecting interest from Red Barn for money that was not lent, DSC was unjustly enriched at the expense of Red Barn.

33. Pursuant to Louisiana Civil Code article 2298, "a person who has been enriched without cause at the expense of another person is bound to compensate that person."

## COUNT III AGAINST BOTH DEFENDANTS—CONVERSION AND ILLEGAL SEIZURE OF RED BARN ASSETS

34. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-33, inclusive, as if pleaded herein *in extenso.*

35. As pled above, between eleven (11) and fourteen (14) Red Barn vehicles were seized by First Choice and delivered to DSC, without providing proper notice to Red Barn.

36. First Choice and DSC illegally seized Red Barn assets by failing to abide by the requirements as set forth in Louisiana Revised Statutes § 6:965, *et seq*.

37. Red Barn requests an order from this Court demanding First Choice and DSC to return the illegally seized vehicles to it.

38. Plaintiffs allege that as a direct and proximate result of the fault of the defendants herein, and each of them, they have sustained damages in the following non-exclusive particulars:

    a) Loss of earnings (past, present, and future);

    b) Business interruption;

    c) Property loss;

    d) Loss of customers;

    e) Loss of goodwill;

    f) Devaluation of the business;

    g) Depreciation on illegally seized vehicles;

    h) Other pecuniary losses including, but not limited to, attorney fees, costs, and interest; and,

    i) Other consequential damages as may be ongoing, as well as any other equitable relief as this Court deems just and proper.

39. Plaintiffs allege that as a direct and proximate result of the fault of the defendants herein, and each of them, they were forced into filing a voluntary petition for bankruptcy under Chapter 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Louisiana.

## TRIAL BY JURY

40. Plaintiffs request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Red Barn Motors, Inc., Donald B. Richardson, and Barbara A. Richardson pray that this Honorable Court enter the following as a judgment against Nextgear Capital, Inc., as successor-in-interest to Dealer Services Corporation, as to Counts One and Two:

    (1) Decree that by back-dating and charging interest on money that was not actually lent to Red Barn, DSC breached the Demand Promissory Note and Security Agreement;

7

(2) Decree that DSC was unjustly enriched at the expense of Red Barn by charging interest on money that was not actually lent to Red Barn;

(3) Award Red Barn damages for injuries it sustained by DSC in an amount to be determined at trial, reasonable attorneys' fees, costs of court, prejudgment and post judgment interest allowed by law; and

(4) Provide for such additional relief as this Honorable Court deems just and proper under the circumstances.

**WHEREFORE**, Red Barn Motors, Inc., Donald B. Richardson, and Barbara A. Richardson pray that this Honorable Court enter the following as a judgment against Nextgear Capital, Inc., as successor-in-interest to Dealer Services Corporation, and Louisiana's First Choice Auto Auction, L.L.C., as to Count Three:

(1) Decree that the Defendants, and both of them, illegally seized Red Barn vehicles in violation of Louisiana Revised Statutes § 6:965, *et seq*;

(2) Decree that the Defendants, and both of them, return the illegally seized vehicles to Red Barn Motors;

(3) Award Red Barn damages for injuries it sustained by DSC and First Choice in an amount to be determined at trial, reasonable attorneys' fees, costs of court, prejudgment and post judgment interest allowed by law; and

(4) Provide for such additional relief as this Honorable Court deems just and proper under the circumstances.

8

—

—

—

—

Respectfully submitted,

/s/ Cassie E. Felder
**Cassie E. Felder (La. Bar No. 27805)**
CASSIE FELDER & ASSOCIATES, L.L.C.
263 3rd Street, Suite 308
Baton Rouge, Louisiana 70801
Phone: (225) 448-3560
Fax:    (225) 372-2862
Email: cfelder@felderllc.com
*Attorney for Plaintiffs*