UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RED BARN MOTORS, INC., ET AL.                    CIVIL ACTION

VERSUS

NEXTGEAR CAPITAL, INC., ET AL.                   NO.: 13-00778-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant Nextgear Capital, Inc.'s ("Nextgear") **Motion to Transfer (Doc. 11)**, seeking an order from this Court granting its motion to transfer the above captioned matter to the United States District Court for the Southern District of Indiana. Nextgear asserts that the parties in the above captioned matter are bound by a forum selection clause requiring disputes to be litigated in the Southern District of Indiana. Regardless of opposition from Plaintiffs Red Barn Motors, Inc. ("Red Barn"), Donald Richardson ("Mr. Richardson"), Barbara Richardson ("Ms. Richardson") (collectively "Red Barn"), and Defendant Louisiana's First Choice Auto Auction, L.L.C. ("First Choice"), Nextgear asserts that the forum selection clause is valid and that First Choice, while not a signatory to the contract, is a party to the events surrounding the contract and is bound by the clause. The motion is opposed. (Docs. 13, 14, 18, 20, 22, 28, 30, 32.) The motion was heard with oral argument on July 8, 2014. Jurisdiction is proper under the diversity jurisdiction of the Court.

# I.    Background

Red Barn filed suit against the Defendants on December 3, 2013. (Doc. 1.) Red Barn alleged various breach of contract claims against the parties, stemming from Red Barn's credit agreement with Nextgear for the purchase of used vehicles at auction. Essentially, Red Barn alleged that Nextgear extended a line of credit to the company, but was fraudulently billing Red Barn for credit that it was not receiving.[1] *See* Doc. 1. Regarding First Choice, Red Barn alleges that First Choice unlawfully seized vehicles during the period in which it was indebted to Nextgear and sold them to Nextgear. Red Barn avers that the profits from these vehicles were supposed to help pay its debt to Nextgear, but was unable to pay that debt because of First Choice's conduct.

On February 6, 2014, Nextgear filed a motion to transfer. (Doc. 11.) Nextgear asserts that any dispute between it and Red Barn is subject to a forum selection clause that was agreed upon in their contract. Pursuant to 28 U.S.C. §1404(a), Nextgear contends that the motion to transfer is the proper mechanism to enforce a valid forum selection clause and that it should be given controlling weight. Red Barn opposes the motion, asserting that the forum selection clause is unenforceable and that the public interest is best served by the case remaining in the United States District Court for the Middle District of Louisiana. (Doc. 14, at 1-2.) First Choice also opposes the motion, asserting that venue is not proper in Indiana and, in any event, the forum selection clause should not apply to them, as it was not a party to the contract containing the

---

[1]Red Barn's complaint notes that Nextgear is successor-in-interest to Dealer Services Corporation, or "DCS." *See* Doc 1. DCS is the party who originally contracted with Red Barn.

clause. (Doc. 13, at 3.) On July 8, 2014, the Court held oral arguments to address the merits of the motion. For the reasons stated herein, the motion to transfer is granted.

## II.    Analysis

The United States Supreme Court has specifically ruled that a motion to transfer under 28 U.S.C. §1404(a) is the proper vehicle for enforcing a forum selection clause and that "a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. United States Dist. Court for the W. Dist. Of Texas*, 134 S. Ct. 568, 579 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988). In its opinion, the court modified the §1404(a) transfer analysis that a district court conducts when considering a party's transfer motion based upon a contract that includes a forum selection clause. *Id.* at 581. However, the modified analysis only applies when the court deems that a forum selection clause is valid. *Id.* at 581 n.5. Where, as here, there is an allegation of fraud, the validity of the forum selection clause is called into question, and the Court must conduct an inquiry into the allegation. Because Red Barn alleges that Nextgear procured the contract through fraud, the Court must first examine the clause featured in the contract between Red Barn and Nextgear to determine whether the forum selection clause is valid.

### A.    Whether the Forum Selection Clause in the Contract Between Red Barn and Nextgear is Valid

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The

Supreme Court requires that courts follow this proposition in admiralty cases. *Id.*

Nevertheless, the United States Court of Appeals for the Fifth Circuit broadened the

ruling to apply in non-admiralty cases. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962-

63 (5th Cir. 1997). In either scenario, the party resisting the clause's enforcement bears

"a heavy burden of proof." *M/S Bremen*, 407 U.S. at 17. To establish the

unreasonableness of a forum selection clause that would prevent its enforcement, the

party must prove either:

> (1) the incorporation of the forum selection clause into the
> agreement was the product of fraud or overreaching; (2) the
> party seeking to escape enforcement 'will for all practical
> purposes be deprived of his day in court' because of the grave
> inconvenience or unfairness of the selected forum; (3) the
> fundamental unfairness of the chosen law will deprive the
> plaintiff of a remedy; or (4) enforcement of the forum
> selection clause would contravene a strong public policy of the
> forum state.

*Haynsworth*, at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595

(1991)). While Red Barn's main assertion is that the forum selection clause was procured

by fraud, it also makes other general allegations of unreasonableness, including the

expenses to be incurred by the parties. As such, the Court will examine all four factors

to determine whether enforcement of the clause would be unreasonable.

### 1. Whether the Forum Selection Clause Was Procured by Fraud

Nextgear asserts that the forum selection clause is valid and enforceable because

it "was not procured by fraud," and that Red Barn was cognizant of the contract's terms

. (Doc. 11-1, at 7.) Red Barn, however, asserts that the forum selection clause is not valid

and is unenforceable because the contract at issue was the product of fraud on the part

of Nextgear, as it never intended to fulfill its contractual obligations. (Doc. 14, at 4.)

Fraud and overreaching only invalidate a forum selection clause when the fraud and overreaching relate specifically to the clause. Allegations of fraudulent conduct concerning the contract as a whole or other contract provisions cannot render a forum selection clause unenforceable. *Haynsworth*, at 963. Nevertheless, if the facts show that the party resisting the clause was "at the mercy of the defendant," and the clause was obscured in the contract, fraud and overreaching will be established. *Couch v. First Guardian Ltd.*, 578 F. Supp. 331, 334 (N.D. Tex. 1984). However, this exception to the clause's presumption of validity should not be read as meaning that the clause is unenforceable anytime a dispute arising out of the agreement is based on potential fraud. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974).

In *Haynsworth*, the Fifth Circuit rejected plaintiffs' arguments that fraud and overreaching by the defendant should preclude enforcement of a forum selection clause. The plaintiffs argued that the defendant failed to disclose important risks prior to their signing of the agreement, but the court found such arguments irrelevant in deciding the enforceability of the forum selection clause. The risks pertained more to the contract as a whole rather than the forum selection clause. *Haynsworth*, at 963-64.[2]

Here, like the plaintiffs in *Haynsworth*, Red Barn accuses Nextgear of fraud. Red Barn argues that the contract "was procured by fraud because NextGear intended to

---

[2]*See also Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616-17 (5th Cir. 2007) (concluding that plaintiff's fraud allegations prior to entering into the agreement with defendant that contained forum selection clause were not enough to establish fraud because the allegations related to the contract as a whole).

breach the contract prior to and at its inception." (Doc. 14, at 4.) Red Barn attempts to establish fraud and overreaching on the part of Nextgear by referring to other similar lawsuits that involved Nextgear. However, Red Barn fails to provide evidence showing that Nextgear fraudulently induced it to sign and agree to the forum selection clause in this instance. All fraud claims made by Red Barn relate to the contract in its entirety, not the forum selection clause itself. (Doc. 14, at 4-5.)

Moreover, the forum selection clause contained in the contract between Nextgear and Red Barn does not support a claim of overreaching. The provision was not buried in the middle of the agreement but was, in fact, featured towards the end of the contract. The heading "Jurisdiction and Venue" was printed in all capital letters. (Doc. 11-2, at 8.) There is nothing ambiguous about the language, and the terms of the provision are clear.

More significantly, during oral arguments, Red Barn admitted that it had no specific or direct evidence to support its allegations of fraud, outside of bare-bone assertions, and that it could not establish a pattern or practice of fraud by Nextgear in other contractual relationships. Red Barn also admitted that it willingly entered into the contract with Nextgear and that there was no coercion associated with its signing of the contract. As such, without more, Red Barn's allegations of fraud are without merit.

2.    **Whether Red Barn Can Show that the Forum Selection Clause was Unreasonable Under Other Factors**

As stated above, a forum selection clause can also be invalidated for several other reasons, including whether the clause unfairly deprives the party challenging the clause

of his or her day in court, the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy, or enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth*, at 963. In this case, Red Barn does not make an argument that the forum selection clause should not be enforced for any of these reasons *per se*. Instead, it argues that inconveniences to the parties and witnesses should be considered in deciding whether to transfer the case to the Southern District of Indiana. (Doc. 14, at 3.) Red Barn avers that the forum selection clause should not be enforced because the facts and nature of the relationship between the parties qualify this matter as an "exceptional case" that necessitates trial in Louisiana. (Doc. 14, at 2.)

Red Barn points to the fact that Mr. And Ms. Richardson[3] are domiciled in Louisiana, that Red Barn is a Louisiana Corporation with its principal place of business in Louisiana, and that both Defendants have a registered office in Louisiana. *Id*. at 3. It also notes that the seizure of Red Barn's assets took place in Louisiana, and that most of the witnesses who must appear at trial are domiciled in Louisiana. Moreover, it asserts that "[t]he costs to transfer and attend court for Plaintiffs and all witnesses exceed the amount that Plaintiffs can afford." *Id*. Red Barn maintains that Nextgear's request for a transfer is based on Nextgear's own needs and concerns without regard to other persons involved in the suit. *Id*. at 2. Finally, Red Barn asserts that it is in the public's best interest to maintain the suit in Louisiana. *Id*. at 3.

_____

[3] Mr. Richardson is the President of Red Barn Motors, Inc. While the complaint does not state this fact explicitly, other documents in the record describe his role in the company. Mr. Richardson also serves as the guarantor on the contract with Nextgear. There is a dispute, however, as to Ms. Richardson's role in the lawsuit. *See* Docs. 10 and 15. While not the subject of this motion, the parties are in disagreement about whether Ms. Richardson has standing to bring suit. Nevertheless, such dispute will have no bearing on the Court's ruling herein.

While the Court notes Red Barn's opposition, such opposition is unavailing here. So long as the venue clause allows the plaintiff to retain his or her "right to a trial by a court of competent jurisdiction," and the contractually-selected forum likely will not dismiss the claim for jurisdictional reasons, the clause should be enforced. *Smith v. Doe*, 991 F. Supp. 781, 784 (E.D. La. 1998); *MacPhail v. Oceaneering Int'l, Inc.*, 170 F. Supp. 2d 718, 727-28 (5th Cir. 2001). Also, "the inconvenience of trying a case in one state versus another" and litigation costs associated with a particular forum, by itself, cannot invalidate a forum-selection clause. *Hartash Constr., Inc.*, No. 00-31120, at *2; *Taylor v. Titan Midwest Constr. Corp.*, 474 F. Supp. 145, 149 (N.D. Tex. 1979). Moreover, the selected forum is not considered unfair or unreasonable when venue is proper under 28 U.S.C. §1391. *See Taylor*, 474 F. Supp. at 149.

In addition, the plaintiff must provide evidence that the chosen state law would deny him or her any remedy if he or she files the lawsuit in the contractually-selected forum. *See Dorsey v. Northern Life Ins. Co.*, 2004 WL 2496214, at *7 (E.D. La. Nov. 5, 2004). In assessing whether the contractually-selected forum will deprive a party of a remedy, courts must consider the remedies available under the selected forum's laws and then determine the adequacy of such remedies. *See Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 514 (5th Cir. 2007).

In the public policy context, a forum selection clause can be rendered unenforceable if "enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth*, at 963. A forum's public policy can be set forth by statute or judicial decision. A clause that provides for "a remote forum to apply

differing foreign law to an essentially American controversy" may violate a forum's public policy. *See M/S Bremen*, at 17.

The Court concludes that Red Barn has failed to prove that the forum selection clause is unreasonable under any of the additional factors established in *Haynsworth*. The Court notes that costs of litigation is a factor in deciding whether a forum selection clause is invalid. However, it is not a factor that would invalidate a forum selection clause, particularly in situations where the party opposing the forum selection clause is a willing participant in the formation of the contract. Again, Red Barn admitted to the Court in oral argument that it was aware of the forum selection clause present in the contract *at the time it entered into the contract*. Red Barn has not provided any evidence indicating that the forum selection clause's terms would deprive it of a remedy in court, would be fundamentally unfair, or would violate any Louisiana public policies either set forth through statute or judicial decision. Red Barn has not provided any evidence, nor pointed to anything in the record, that would call into question the validity of the clause. As such, the Court finds that the forum selection clause is valid.

## B. Whether the Forum Selection Clause is Enforceable Against First Choice, a Non-Signatory to the Contract

The Court must now determine whether the forum selection clause is valid against First Choice, which is a non-signatory party of the contract. First Choice argues that the forum selection clause cannot be enforced against it because it was not a party to the original contract. (Doc. 13, at 3.) Nextgear argues that the forum selection clause is

enforceable against First Choice because "First Choice is closely related to the causes asserted by Plaintiffs and the related transactions such that it should be bound to the forum selection clause." (Doc. 28, at 7.)

A "non-signatory" or third party can be bound to an agreement even though the contract's terms do not clearly bind the party. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). The federal courts of appeals, including the Fifth Circuit, recognize six ways a non-signatory can be bound to an agreement, which include "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Id.* (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187 (3d Cir. 2001); *Thomson-C.S.F., S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). In this case, the parties focus solely on this issue of estoppel, and whether First Choice can be bound to the contract under that particular theory. (Doc. 30, at 2; Doc. 32, at 3.)

The Fifth Circuit recognizes two types of estoppel. The first, or "intertwined claims theory," gives a non-signatory the ability to enforce parts of the contract against a signatory. *Compana LLC v. Mondial Assistance*, 2008 WL 190522, at *4 (N.D. Tex. 2008). The second, relied upon by Nextgear in support of its motion to transfer, is "direct benefits estoppel." *Bridas S.A.P.I.C.*, at 361. "Direct benefits estoppel applies when a non[-]signatory knowingly exploits the agreement containing the arbitration clause." *Id.* at 361-62 (quoting *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d. 187, 199 (3d Cir. 2001)). Under this theory, a

10

non-signatory cannot deny a contract term when it received a direct benefit from the agreement or "embraced" the contract throughout its duration. *See Id.* at 362.

Nextgear asserts that, under this theory, First Choice is a direct beneficiary of the contract between Red Barn and Nextgear because, without it, First Choice would not have received payment for any vehicles acquired by Red Barn at the auctions conducted by First Choice. (Doc. 22-1, at 3.) It further asserts that the facts of this case are comparable to Fifth Circuit opinions that have addressed this exact situation, and found that a non-signatory can be bound by a forum selection clause. Nevertheless, First Choice maintains that, regardless of Nextgear's contentions, it received no benefit from the contract, and that it would be burdensome to require it to defend itself in a venue "half-way across the country." (Doc. 30, at 2.) First Choice further asserts that Nextgear's actions would be futile because it would immediately file a motion to dismiss for lack of personal jurisdiction. *Id.*

A non-signatory embraces a contract either by "knowingly seeking and obtaining direct benefits from that contract" or "by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to the contract." *Nobel Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 54, 517-20 (5th Cir. 2006)). The non-signatory must have "actual knowledge" of the contract containing the disputed provision. *See Id.* However, the non-signatory does not need to be aware of the specific contract term at issue so long as the non-signatory "directly accepts benefits under the contract." *Compana LLC*, at *8.

Both parties rely heavily on the Fifth Circuit's findings in *Hellenic Investment Fund, Inc.* In that case, the Fifth Circuit applied the direct benefit estoppel theory when it bound a non-signatory to a forum selection clause. The Court found that the non-signatory received benefits from the contract and benefitted specifically from a signatory's performance of the contract. 464 F.3d at 518-20. The signatories contracted for one of them to perform inspections on ships located in an inlet. The non-signatory then purchased a ship in the inlet. *Id.* at 515-16. The Court held that the non-signatory benefitted from the inspection services contract because the non-signatory purchased the ship on the condition that its expiring inspections would be updated, and that the signatories' contract covered all inspection services in the inlet. The Court reasoned that the non-signatory received direct benefits from the contract containing the forum selection clause because its purchase of the ship depended on the signatory performing its obligations to provide inspection services. *Id.* at 519.

However, the Court notes other instances where the Fifth Circuit found that direct benefits estoppel was inapplicable. In *Noble Drilling Services, Inc.*, the Fifth Circuit held that a non-signatory was not bound by an arbitration clause and that the direct benefits estoppel theory did not apply. 620 F.3d at 475. The non-signatory claimed that it never knew about the agreements until after the lawsuit began and that it had no knowledge of any agreements between the distributor and manufacturer at the time it purchased items from the distributor. Because the signatory could not provide evidence of the non-signatory's knowledge of the agreement, the Court found that the knowledge requirement of the direct benefits estoppel theory was not satisfied. *Id.* at 473-74.

Similarly, in *Bridas S.A.P.I.C.*, the Fifth Circuit refused to bind the non-signatory to an arbitration clause in the agreement under the estoppel theory. 345 F.3d at 360-62. The court examined whether the non-signatory "knowingly exploit[ed] the agreement containing the arbitration clause." *Id.* at 362. The agreement related to the conducting of "hydrocarbon operations" while the suit related to the arbitration award given to one of the contracting parties. *Id.* at 351-52. The court held that the non-signatory did not exploit the agreement because its claims concerning the arbitration award against the signatory were unrelated to the agreement. *Id.* at 362.

Here, the Court concludes that this case is akin to *Hellenic Investment Fund, Inc.*, and that First Choice directly benefited from the contract. As noted above, Red Barn entered into an agreement with Nextgear where Nextgear would provide Red Barn with a line of credit that would allow Red Barn to purchase vehicles at auctions to sell in its used car lot. (Doc. 1, at 11-12.) Red Barn does not mention in its complaint whether it purchased vehicles from First Choice prior to First Choice seizing the vehicles. (Doc. 1.) However, after a closer review of the record, the Court notes that Red Barn provided titles to vehicles, which are dated prior to the seizure of the vehicles in April 2013. (Doc. 16-1, Exhibit B at 4-14.) While these documents are not submitted in conjunction with the instant motion, the Court finds the review of these documents useful.

All of the titles to the vehicles that Red Barn purchased from First Choice contain the initials "DSC" written on the top. (Doc. 16-1, Exhibit B, at 4-14.) As previously noted, Nextgear is a successor-in-interest to DSC or Dealer Services Corporation. (Doc. 1.) While the Court notes that these titles were submitted in conjunction with Red Barn's

motion, it nevertheless supports a conclusion that First Choice had some knowledge of an arrangement between Red Barn and Nextgear regarding the purchase of the vehicles. First Choice received benefits from the contract because Red Barn purchased vehicles from the auction with money provided to it by Nextgear under the contract. First Choice would not have sold these vehicles to Red Barn but for Nextgear's performance under the contract. The Court agrees with Nextgear that "First Choice relied upon the financial ability of Red Barn in the form of the Note [credit agreement] which allowed the transactions involving First Choice to be consummated." (Doc 22-1, at 4.)

Furthermore, unlike the claims in *Bridas S.A.P.I.C.*, all claims against the non-signatory in this matter relate to Red Barn's agreement with Nextgear. Red Barn argues that First Choice seized vehicles on Red Barn's lot upon the communication and direction of Nextgear. (Doc. 16, at 2.) In March of 2013, Red Barn could no longer make payments to Nextgear and, in April 2013, First Choice seized the vehicles and delivered them to Nextgear. (Doc. 1, at 20-22.) The seizure of the vehicles was likely due to Red Barn defaulting on its payments under the contract. Again, the claims against First Choice in this matter relate to the seizure of the vehicles. (Doc. 1, at 35-36.) As such, the Court concludes that Red Barn's claims against First Choice relate to the agreement between Red Barn and Nextgear, and the theory of direct benefits estoppel applies in this matter. Because the Court finds that the theory of estoppel applies here, it finds that First Choice, while a non-signatory of the contract, is bound by the forum selection clause.

C.    **Whether the Court Should Grant Nextgear's Motion to Transfer under §1404(a)**

Having determined that the forum selection clause at issue is valid and enforceable against both Red Barn and First Choice, the Court must now determine whether the case should be transferred to the Southern District of Indiana.

§1404(a) allows a district court to "transfer any civil action to any other district or division where [the case] might have been brought or to any district or division to which all parties have consented." The Court will first determine whether the lawsuit could have originally been filed in the transferee court. *Carmouche Ins., Inc. v. Astonish Results, LLC*, 2014 WL 2740464, at *2 (M.D. La. 6/17/14).

A case could have originally been filed in a judicial district if the cause of action could have been brought in the district or all parties consented to the district. *Harland Clarke Holdings Corp. v. Milken*, 2014 WL 468840, at *6 (W.D. Tex. 2014). A case "might have been brought" in a district if the venue requirements outlined in 28 U.S.C. §1391(b) are satisfied. *Atl. Marine Constr. Co.,* at 578. Under §1391(b), venue is proper in:

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action otherwise may be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28. U.S.C. §1391(b). §1391(c) defines the residency of corporations who are defendants in a suit as "any judicial district in which such defendant is subject to the court's

personal jurisdiction." 28 U.S.C.A. §1391(c) (West 2014). Furthermore, §1391(d) sets forth a corporation's residency in a state with multiple judicial districts:

> In a state which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. §1391(d). Indiana has two judicial districts, the Northern District and the Southern District. Because Indiana has multiple judicial districts, §1391(d) governs the residency of both Nextgear and First Choice in this matter, meaning that Nextgear and First Choice must have sufficient contacts with the Southern District of Indiana for it to be deemed a resident of that district. According to the complaint, Nextgear maintains its principal place of business in Carmel, Indiana. (Doc. 1, at 2.) Carmel is located within the Southern District of Indiana. Nextgear likely has sufficient contacts with the Southern District of Indiana for it to be deemed a resident of that district for venue purposes. First Choice is a Texas limited liability company that does business in Louisiana and maintains a principal place of business in Louisiana. (Doc. 1, at 2.) It is unlikely that First Choice would have sufficient contacts with the Southern District of Indiana for it to be a resident thereof, and it is more likely that First Choice would be deemed a resident of Texas and Louisiana for the contacts it has with those respective states.

Having defined the residency of the defendants, the Court will now consider the applicability of the venue provisions outlined in §1391(b). As described above, Nextgear and First Choice do not reside in the same state so §1391(b)(1) is inapplicable. After examining whether §1391(b)(2) applies, the Court finds that all of the allegations in the complaint surround activities that occurred in the Middle District of Louisiana. (Doc. 1.) Therefore, it is likely that venue would lie in the Middle District of Louisiana under federal venue laws.

However, §1404(a) allows transfer to a district in which all parties consented. The Fifth Circuit has held that parties who are bound to a forum selection clause also consent to venue for purposes of §1404(a). *Harland Clarke Holdings Corp.,* at *17. In *Harland,* all parties agreed that the federal venue statute did not permit venue in the transferee court. The Court did not discuss whether venue lied in the transferee court because it found that all parties consented to venue in the transferee court. *Id.* at *6. In analyzing whether all parties consented to venue, the Court examined the contract's forum selection clause. *Id.* After the Court found the clause binding on the signatories to the contract, it analyzed whether the presence of non-signatories in the suit prevented transfer to the transferee court. *Id.* *8-9. The forum selection clause was held to be binding on the non-signatories because they directly benefitted from the contract at issue. *Id.* at *15. Ultimately, the Court held that "a party that is bound by a mandatory forum-selection clause . . . has consented to that forum for purposes of §1404(a)." *Id.* at *17.

Here, as described above, the signatories to the contract are bound by the forum selection clause. Also as described above, First Choice is bound to the forum selection clause, even as a non-signatory, because it directly benefitted from the contract between Nextgear and Red Barn.[4] Because all parties are bound by the clause, the Court finds that all parties consented to venue in the Southern District of Indiana.

The Court must consideer the standard used when assessing a transfer motion premised on a forum selection clause, as outlined in by the Supreme Court in *Atl. Marine Constr. Co. 1-Stop Fin. Serv. Ctrs. Of Amer., LLC v. Astonish Results, LLC*, 2014 WL 279669, at *6 (W.D. Tex. 2014). In *Atl. Marine Constr. Co.*, the Supreme Court reconsidered the factors that a Court should consider when considering a motion to transfer under 1404(a) that is based on a contract containing an enforceable forum selection clause in three ways.

First, the Court should not give the plaintiff's choice of forum any weight. Rather, the plaintiff bears the burden of "establishing that transfer to the forum for which the parties bargained is unwarranted."*Atl. Marine Constr. Co.*, at 581. Second, a court should no longer consider "private interest factors" because parties wave arguments of inconvenience when they agree to a forum selection clause. *Id.* at 582. Third, when a party bound by a forum selection clause " flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with the original venue's

---

[4] *See also Infinity Consulting Group, LLC v. Am. Cybersystems, Inc.*, 2010 WL 2267470, at *2 (E.D.N.Y. May 30, 2010) ("[Nonsignatory] is 'closely related' enough to the contract such that he is bound by the contract's forum selection clause and thus consented to jurisdiction in the E.D.N.Y."); *Affiliated Mortg. Protection, LLC v. Tareen*, 2007 WL 203947, at *3 (D.N.J. Jan. 24, 2007) (finding nonsignatory defendants " 'closely related to the contractual relationship' and, therefore, ... bound by the forum selection clause in the contract ... giving this Court jurisdiction over them by implied consent")).

choice-of-law rules." *Id.* Under the third modification, the transferee court does not have to apply any law from the original, transferor court, particularly in cases where there is a valid forum selection clause present. *Id.* The party who violated the forum selection clause by filing suit in a different forum has the burden of demonstrating to the Court that the public interest factors "overwhelmingly disfavor a transfer." *Id.* at 583.

As stated above, the Court concludes that Red Barn has not established that a change in forum is warranted. Red Barn has admitted to the Court that there is no evidence to show that the forum selection clause was induced by fraud, nor that Nextgear has exhibited a pattern or practice of fraudulent dealings in similar transactions. Outside of financial arguments, Red Barn has not articulated to the Court why a transfer should not be granted. Moreover, the Court concludes that First Choice, although a non-signatory on the contract, has not articulated sufficient reasons for the denial of a transfer. While its role in the events of this suit may not be as significant as the other parties, it has not convinced the Court that a change in forum is unreasonable. As such, the Court will not give Red Barn's choice of forum any weight.

Regarding the Supreme Court's second modification to a district court's analysis, the Court must evaluate public interest factors before determining whether a transfer is warranted. The first public interest factor for the Court to consider is "the administrative difficulties flowing from court congestion." *Atl. Marine Constr. Co.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 245, n. 6 (1981)). Courts in this circuit have consistently held that when no party provides evidence to show that this factor should be heavily considered by the Court prior to transferring the case to another

district, the factor is neutral. *Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guar. Plan*, 2014 WL 888407, at *6 (W.D. La. 3/6/14); *BLB Aviation South Carolina, LLC v. Jet Linx Aviation Corp.*, 2010 WL 370342, at *5 (M.D. La 1/29/10). However, a court can utilize any knowledge it has of the "flow of the docket" in the transferee court to assess whether court congestion in the transferee court does not support transferring the case. *BLB Aviation South Carolina, LLC*, 2010 WL 370342 at *5. "The median time interval from case filing to disposition" is the most critical statistic when the Court analyzes this factor. *Rosemond v. United Airlines, Inc.*, 2014 WL 13386690, at *4 (S.D. Tex. 2014) (citing *Siragusa v. Arnold*, 2013 WL 5462286, at *7 (N.D. Tex. 2013)).

The second public interest factor is "the local interest in having localized controversies decided at home." *Atl. Marine Constr. Co.*, at 581 n.6 (quoting *Piper Aircraft Co.*, at 245 n.6). The Court must determine whether the case has any "relevant factual connection" to the transferee court. *In re Volkswagen of Amer., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008). A factual connection to the transferee court can be established by either the plaintiff or defendant residing in the transferee district or if most of the events that gave rise to this litigation occurred in the district. *Marshall v. Smith*, 2013 WL 6979022, at *6 (W.D. La. 12/4/13). A judicial district will have a strong interest in the case when a case involves injury to a party located within the district, the injuries occurred within the district, and when the case involves a company that does business within the state and caused damage within the state. *Pride Intern., Inc. v. Tesco Corp. (US)*, 2014 WL 72219, at *4 (S.D. Tex. 2014); *Aetna Life Ins. Co. v. Methodist Hosps. of Dallas*, 2014 WL 297620, at *4 (S.D. Tex. 2014); *BLB Aviation South Carolina*, at *5.

However, this factor is not dispositive in granting or denying a motion to transfer premised on a forum selection clause. *Carmouche Ins., Inc.*, at *5.

The final public interest factor is "the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Constr. Co.*, at 581 n.6 (quoting *Piper Aircraft Co.*, at 245 n.6). The party challenging the motion to transfer must demonstrate to the court that there is some "arcane features" of the original forum's law that would be difficult for judges in the transferee court to apply. *Id.* at 584. However, it is unlikely that this factor would ever weigh against transferring a case to another federal district because "federal judges routinely apply the law of a [s]tate other than the [s]tate in which they sit." *Id.* Furthermore, a choice-of-law provision in a contract which sets forth the law that governs the case at hand will support transfer to the state whose law governs disputes related to the contract unless the party challenging it can prove that the clause is invalid. *BLB Aviation South Carolina, LLC*, at *6.

Here, Red Barn's arguments against transferring the case to the venue delineated in the forum selection clause relate solely to the convenience of the parties. Red Barn specifically argues that transferring the case outside of the Middle District of Louisiana would cause it extreme economic hardship and that the costs associated with transferring the case would justify keeping the case in the Middle District. (Doc. 14, at 3.) First Choice makes a similar argument, pointing out the inconvenience of defending the suit in Indiana. However, Red Barn provides no evidence that the public interest factors overwhelmingly disfavor the motion to transfer. The Court concludes that Red

Barn fails to meet its heavy burden of showing that the public interest factors overwhelmingly disfavor transferring the case to the Southern District of Indiana.

In regards to the first factor and court congestion, after calculating the median time intervals from when a case was filed to when it is disposed of between the Middle District of Louisiana and the Southern District of Indiana, the Court found that in the Southern District of Indiana, the median time interval is 8.8 months while the median time interval in the Middle District of Louisiana is 11.4 months.[5] It appears that the Southern District of Indiana's docket is less congested than this Court's docket, for purposes of this ruling. Therefore, the first public interest factor slightly favors granting the motion to transfer.

Concerning the second public interest factor, this dispute contains some ties to both the original venue and the transferee court. Both Red Barn and First Choice are domiciled in Louisiana and in the Middle District of Louisiana. (Doc. 1, at 2.) Admittedly, all of the events giving rise to Red Barn's allegations against First Choice and Nextgear appear to have occurred in the Middle District of Louisiana, which includes (1) where Nextgear originally approached Red Barn about entering into a "floor plan agreement," (2) where Red Barn purchased vehicles from auctions using the line of credit Nextgear contractually provided, and (3) where First Choice allegedly seized the cars that belonged to Red Barn to provide to Nextgear. (Doc. 1, at 2-5.)

---

[5] "U.S. District Courts-Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2013," Table C-5, p. 2. In Statistical Tables for the Federal Judiciary. uscourts.gov, 2013.

However, Nextgear is domiciled in the Southern District of Indiana. (Doc. 1, at 2.) Moreover, the forum selection clause contained in the agreement between Red Barn and Nextgear stated that the Southern District of Indiana was to be the exclusive forum where all disputes related to the contract would be litigated. (Doc. 11-2, at 8.) As such, it appears that the second factor is neutral because both the Southern District of Indiana and the Middle District of Louisiana have some interest in deciding the case.

Finally, the third public interest factor weighs heavily in favor of a transfer. In addition to the forum selection clause, the contract between Red Barn and Nextgear also contained a choice of law provision, undisputed by Red Barn, which indicates that Indiana law will govern any disputes related to the contract. (Doc. 11-2, at 8, ¶ 21.) Such a choice of law provision contained in a contract will be enforced unless the party challenging it proves that the provision should be invalidated. *BLB Aviation South Carolina, LLC*, at *6. Red Barn and First Choice have failed to provide evidence to show that the choice of law provision should be invalidated. As such, without more, the Court is left to conclude that the forum chosen by the parties in the contract, the Southern District of Indiana, is the proper venue in this case. The motion to transfer is GRANTED.

III.    **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant Nextgear Capital, Inc.'s **Motion to Transfer (Doc.11)** is **GRANTED**.

IT IS FURTHER ORDERED that the above captioned matter is TRANSFERRED to the **United States District Court for the Southern District of Indiana**.

Baton Rouge, Louisiana, this _29th_ day of September, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**