## United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

LYLE W. CAYCE  
CLERK

TEL. 504-310-7700  
600 S. MAESTRI PLACE  
NEW ORLEANS, LA 70130

July 20, 2015

Mr. Michael L. McConnell  
U.S. District Court, Middle District of Louisiana  
777 Florida Street  
Room 139  
Baton Rouge, LA 70801

    No. 15-30067   In re: Red Barn Motors, Inc., et al  
                     USDC No. 3:13-CV-778

Dear Mr. McConnell,

Enclosed is a certified copy of an opinion-order entered on July 20, 2015. We have closed the case in this court.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____  
                              Joseph M. Armato, Deputy Clerk

Enclosure(s)

cc:  
    Ms. Lisa Brener  
    Mr. Robin Bryan Cheatham  
    Mr. Joshua Paul Melder

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30067

United States Court of Appeals
Fifth Circuit
**FILED**
July 20, 2015
Lyle W. Cayce
Clerk

In re:

RED BARN MOTORS, INCORPORATED; BARBARA A. RICHARDSON; DONALD B. RICHARDSON; LOUISIANA'S FIRST CHOICE AUTO AUCTION, L.L.C.,

                                         Petitioners.

Petitions for Writs of Mandamus to
the United States District Court
for the Middle District of Louisiana

Before SMITH, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:

      These petitions for writs of mandamus ask us to order the United States District Court for the Middle District of Louisiana to vacate its transfer to the Southern District of Indiana. The petitions were filed more than three months after the transfer and after proceedings had begun in the transferee court. We deny the petitions.

I.

      Red Barn Motors, Incorporated ("Red Barn"), is a car dealership that, in

Case: 15-30067    Document: 00513122196    Page: 2    Date Filed: 07/20/2015
Case 3:13-cv-00778-BAJ-RLB    Document 38    07/21/15    Page 3 of 8

No. 15-30067

2011, entered into an agreement with Dealer Services Corporation ("DSC") for DSC to finance Red Barn's purchase of vehicles at auction. According to Red Barn's complaint, when it would buy a vehicle at auction, sometimes six to eight weeks would elapse before the auction house would obtain the title and transfer it to DSC. Red Barn contends that DSC would not pay the auction house until DSC received the title but would charge interest and fees starting from when Red Barn made the purchase, weeks before DSC transferred the funds to the auction house.

In March 2013, Red Barn stopped making payments to DSC on its line of credit, whereupon DSC began seizing some of Red Barn's assets. In April, Red Barn delivered about a dozen vehicles to Louisiana's First Choice Auto Auction, L.L.C. ("First Choice"), to sell, but First Choice delivered them to DSC. Red Barn declared bankruptcy that month. At some point, DSC was absorbed by NextGear Capital, Inc. ("NextGear").

## II.

Red Barn sued NextGear and First Choice in the Middle District of Louisiana, claiming breach of contract and unjust enrichment by NextGear and conversion by both defendants. NextGear moved to transfer the case to the Southern District of Indiana under 28 U.S.C. § 1404(a).[1] NextGear attached to its motion a copy of the promissory note that Red Barn had tendered to DSC, which stated that Red Barn consented to personal jurisdiction and venue in the state and federal courts of Marion and Hamilton Counties, Indiana, and that any claims by Red Barn against DSC arising out of the promissory note would be brought in those courts.

---

[1] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

2

No. 15-30067

First Choice and Red Barn opposed the transfer. Red Barn contended that this was an exceptional case in which a forum-selection clause should not be enforced; it also alleged that NextGear had intended to breach the promissory note when signing it and had therefore procured the contract by fraud. First Choice, meanwhile, contended that venue would be improper in Indiana because First Choice was a Texas company with its principal place of business in Louisiana, and all of the events relating to the lawsuit took place in Louisiana. Additionally, First Choice stated that the forum-selection clause could not be applied against it because it was not a signatory.

NextGear responded, in relevant part, that First Choice could be bound to the forum-selection clause under the doctrine of direct-benefits estoppel, which in some circumstances can make a forum-selection clause effective against a nonsignatory.[2] NextGear contended that First Choice was aware of the financing agreement because the purchase forms executed by First Choice and Red Barn noted DSC as the financer. Additionally, NextGear asserted that First Choice benefited from the agreement because it allowed Red Barn to buy First Choice's vehicles.

The court held a hearing on the transfer motion in July 2014 and granted it in September 2014. The court reasoned that First Choice had knowingly exploited the contract. Because § 1404(a) allows transfer to a venue to which the parties have consented, the court held that the case could be transferred to the Southern District of Indiana even though that court probably would not otherwise have personal jurisdiction over First Choice. The court then conducted the rest of the transfer analysis, ultimately concluding that this was

---

[2] *See, e.g., Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.*, No. 14-20538, 2015 U.S. App. LEXIS 6200, at *5−9 (5th Cir. Apr. 16, 2015) (per curiam) (unpublished); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 291−93 (5th Cir. 2015), *petition for cert. filed* (May 14, 2015) (No. 14-1366).

3

Case: 15-30067    Document: 00513122196    Page: 4    Date Filed: 07/20/2015
Case 3:13-cv-00778-BAJ-RLB    Document 38    07/21/15    Page 5 of 8

No. 15-30067

not an exceptional case in which a forum-selection clause should not be enforced. The clerk electronically transferred the case to the Southern District of Indiana in September.

Red Barn waited until January 2015 to file the instant mandamus petition, and First Choice followed with its own petition in February. The case is pending in Indiana, that court having temporarily stayed proceedings awaiting the outcome of these petitions.

Both petitions claim that the district court erred in enforcing the forum-selection clause against First Choice, a nonsignatory to the contract containing the clause. They contend First Choice received no benefits under the contract and had no knowledge of its terms and that applying the clause against it through direct-benefits estoppel was therefore improper.

Although NextGear did not initially question our jurisdiction to order mandamus, we have an independent obligation to determine our own jurisdiction, even if the question is not raised or disputed by the parties. *See, e.g.*, *Sandy Creek Investors, Ltd. v. City of Jonestown, Tex.*, 325 F.3d 623, 626 (5th Cir. 2003). We ordered supplemental briefing on the question whether this court has jurisdiction to issue the writ. Because petitioners did not diligently seek review of the transfer in this court, we deny the petitions.

### III.

The All Writs Act, 28 U.S.C. § 1651, empowers us to issue writs of mandamus, but that statutory authority does not itself confer jurisdiction. *Regions Bank of La. v. Rivet*, 224 F.3d 483, 493 (5th Cir. 2000). We can issue a writ of mandamus only if we have jurisdiction. *See United States v. Denedo*, 556 U.S. 904, 911 (2009). "The power conferred on [the circuit courts of appeals] by

4

Case: 15-30067 Document: 00513122196 Page: 5 Date Filed: 07/20/2015
Case 3:13-cv-00778-BAJ-RLB Document 38 07/21/15 Page 6 of 8

No. 15-30067

§ 1651 is limited to their appellate jurisdiction."[3] Our jurisdiction for mandamus "is not confined to the issuance of writs in aid of a jurisdiction already acquired on appeal but extends to those cases which are within [our] appellate jurisdiction although no appeal has been perfected." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943).

The jurisdiction of the courts of appeals extends to "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Generally, however, such an appeal can be taken only by "the court of appeals for the circuit embracing the district," 28 U.S.C. § 1294(1), so we can take appeals only from district courts in Texas, Mississippi, and Louisiana and certain administrative agencies. 28 U.S.C. § 41. This case began in a Louisiana district court but has been transferred to a district court in the Seventh Circuit, in which any appeal would lie.

The Louisiana court, meanwhile, has lost its jurisdiction. *In re Sw. Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963). It is no longer capable of making a final decision that would be appealed to us. No party contends that the transfer order is an immediately reviewable decision. *See In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014). This is not just a case in which no appeal to the Fifth Circuit has been perfected; instead, it is a proceeding in which no appeal to this court can be taken, short of the purely speculative possibility that the Indiana court transfers it back.

In *Southwestern Mobile Homes*, 317 F.2d at 66, we recognized it was "extremely doubtful" that we had authority over a case once it was transferred to a district court in a different circuit. It seems uncontroversial in this

---

[3] *In re Grand Jury Proceedings*, 724 F.2d 1157, 1160 (5th Cir. 1984) (quoting 9 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 110.28, at 315 (2d ed. 1983)).

Case: 15-30067 Document: 00513122196 Page: 6 Date Filed: 07/20/2015
Case 3:13-cv-00778-BAJ-RLB Document 38 07/21/15 Page 7 of 8

No. 15-30067

situation that a transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly.[4]

Although we lack jurisdiction to order the transferee district court to return the case,[5] several circuits, where appropriate, have endorsed the method of directing the transferor district court to request that the transferee district court return the case.[6] In *Southwestern Mobile Homes*, we recognized that using mandamus to undo a completed inter-circuit transfer risks "provok-[ing] a possible conflict between the Circuits"; thus, if we even have the power to reverse such a transfer, we should exercise it only if faced with "a very extreme case." 317 F.2d at 66–67. Here, that risk is tempered because the transferee district court has expressly stayed all proceedings pending this panel's decision.

Despite the potential availability of this remedy, mandamus is not warranted here.[7] A court of appeals should consider directing that the

---

[4] *See, e.g.*, *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 143 n.4 (3d Cir. 1999); *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 655 (6th Cir. 2009); *In re Nine Mile Ltd.*, 673 F.2d 242, 244 (8th Cir. 1982); *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516–17 (10th Cir. 1991); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 988 n.10 (11th Cir. 1982); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc); *see also Manchester v. U.S. Org. Crime Drug Enforcement Task Force of Mid-Atl. Region*, 900 F.2d 253 (4th Cir. 1990) (table).

[5] *In re McBryde*, 117 F.3d 208, 221 (5th Cir. 1997) (stating that we lack mandamus authority over district courts in other circuits); *see also Warrick*, 70 F.3d at 737 (concluding that court of appeals lacks power to compel out-of-circuit court to return a case).

[6] *See In re Warrick*, 70 F.3d 736, 740 (2d Cir. 1995); *Town of N. Bonneville, Wash. v. U.S. Dist. Court, W. Dist. of Wash.*, 732 F.2d 747, 752 (9th Cir. 1984); *In re Sosa*, 712 F.2d 1479, 1480 & n.1 (D.C. Cir. 1983); *In re Nine Mile Ltd.*, 673 F.2d 242, 244 (8th Cir. 1982). Some courts have also held that a court of appeals has jurisdiction to vacate a completed inter-circuit transfer if the case was transferred to a court in which it could not have originally been brought, although the mandamus order often involves a request that the transferor court request the case back from the transferee court. *See, e.g.*, *Town of N. Bonneville, Wash. v. U.S. Dist. Court, W. Dist. of Wash.*, 732 F.2d 747, 752 (9th Cir. 1984); *Farrell v. Wyatt*, 408 F.2d 662, 664–65 (2d Cir. 1969) (distinguishing between treatment of transfers that are abuses of discretion and those that are beyond the transferor court's power).

[7] *See Cheney v. U.S. Dist. Court for Dist. of* Columbia, 542 U.S. 367, 381 (2004) (holding

No. 15-30067

transferor district court request return of the case only where the case has been transferred "despite the petitioner's diligence."[8]  Petitioners did not timely seek review of the transfer order.  Although they could not have done so before the case was transferred, they offer no explanation for waiting more than three months before filing any petition for review.  Petitioners have not been diligent in seeking review of the transfer.[9]

The petitions for writs of mandamus are DENIED.



**Certified as a true copy and issued as the mandate on Jul 20, 2015**

**Attest:** *Tyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

---

that, to grant a writ of mandamus, a court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances").

[8] *Warrick*, 70 F.3d at 740; *see also Starnes*, 512 F.2d 918 at 924 (holding that it is "essential that procedures be adopted and observed that will provide plaintiffs a fair opportunity to seek review in the transferor circuit prior to the physical transfer of the record.").

[9] Because we find that petitioners' had a fair opportunity to seek review but were not diligent, we do not reach the merits of petitioners' argument.

7